## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**EDIN KARAHODZIC and**
**EDIN KARAHODZIC, as**
**Personal representative of the**
**Estate of HASIB KARAHODZIC**

        **Plaintiffs,**

**vs.**

**JBS CARRIERS INC. and ORENTIO**        **Case No. 12-cv-1040-DRH**
**THOMPSON,**

        **Defendants.**

## <u>ORDER</u>

**HERNDON, District Judge:**

Pending before the Court are plaintiffs' motions in limine to exclude improper evidence and argument relating to: (1) any reference to Hasib Karahodzic's or EJA Trucking's alleged violation of the Federal Motor Carrier Safety Regulations prior to or in connection with the March 17, 2012 collision (Doc. 110); (2) any reference to Edin Karahodzic's alleged violation of the Federal Motor Carrier Safety Regulations prior to or in connection with the March 17, 2012 (Doc. 112); (3) any reference to any party's religious affiliation (Doc. 114); (4) any reference to Hasib Karahodzic's alleged fatigue being similar to or the same as having any level of blood alcohol concentration (Doc 116); (5) any reference to information or documentation of John Gobelbecker's nighttime video study (Doc 118); (6) any reference to information or documentation of Dan Witta's

lane change study used in John Gobelbecker's report (Doc 120); (7) any reference
to information or documentation of fatigue (Doc. 122).

**a.      Plaintiff's Requests for Exclusion of Specific Evidence**

Plaintiff seeks preclusion of specific evidence pursuant to FEDERAL
RULES OF EVIDENCE 401, 402, and 403.  Rule 401 holds evidence is relevant if
it "has any tendency to make a fact more or less probable than it would be
without the evidence."  FED. R. EVID. 401.  Further, relevant evidence is
admissible unless a binding rule holds otherwise, while irrelevant evidence is
inadmissible. See FED. R. EVID. 402.  Lastly, "[t]he court may exclude relevant
evidence if its probative value is substantially outweighed by a danger of one or
more of the following: unfair prejudice, confusing the issues, misleading the jury,
undue delay, wasting time, or needlessly presenting cumulative evidence."  FED.
R. EVID. 403.

**The Court hereby finds as follows:**

**1. Plaintiff's First Motion *in Limine* to Exclude Reference to Any Alleged
Federal Motor Carrier Safety Regulation Violations by Hasib Karahodzic or
EJA Trucking prior to or in connection with the March 17, 2012 collision
(Doc. 110)**

Plaintiffs request an Order prohibiting defense counsel and/or their
witnesses from making reference to alleged Federal Motor Carrier Safety
Regulation violations on the part of Hasib Karahodzic or EJA Trucking in this
case.

In response, Defendants argue that the purpose of said evidence is to establish that Hasib Karahodzic was fatigued at the time of the accident, and that the fatigue was the cause of the accident at issue (Doc. 133). Defendants go on to clarify that they "will not be specifically arguing that Decedent "violated the *Federal Hours of Service Regulations;* but rather, will provide the jury with all of the necessary information it may need in order to reach its own determinations." (*Id.* at 3).  Consistent with this Court's previous ruling (Doc. 106) and in keeping with defendant's proffer regarding how they intend to use the evidence, the Court **DENIES** the motion.

**2. Plaintiff's Second Motion *in Limine* to Exclude Reference to Any Alleged Federal Motor Carrier Safety Regulation Violations by Edin Karahodzic prior to or in connection with the March 17, 2012 collision (Doc. 112)**

Plaintiffs request an Order prohibiting defense counsel and/or their witnesses from making reference to alleged Federal Motor Carrier Safety Regulation violations on the part of Edin Karahodzic in this case, arguing that the evidence is not relevant to the issues in this case, given Edin's role as a eyewitness who came upon the scene after the accident occurred. Additionally, plaintiffs argue that any expert testimony regarding alleged hours of service regulations is inadmissible. See *Good Shepard*, 323 F.3d at 564 (held expert testimony that included "conclusions that the [defendants] violated the [Fair Housing Amendments Act]" was properly excluded).

In response, Defendants argue that the purpose of said evidence is not to offer opinions relative to Federal Motor Carrier Safety Regulation violations, but instead to examine Edin's perception and recollection of the events that occurred immediately following the accident. Defendants propose this information to be used during Defendant's cross examination relevant to Edin's state of mind following the accident. Defendants argue that it is relevant with regard to the conversations he recalled having with Thompson and first responders at the accident scene, as well as his ability to remember Thompson's actions immediately following the accident.

Accordingly, the Court finds that Defendants may refer to Edin's books and log records to determine the amount of time he had been driving in order to explore the issue of his fatigue. However, this shall be done without reference to the hours of service regulations.  Edin's fatigue and ability to perceive and observe the events following the accident are at issue in this case, but his culpability per the regulations is not. Therefore Plaintiff's motion is **GRANTED.**

**3. Plaintiff's Third Motion** *in Limine* **to Exclude Reference to Any Party's (including Hasib Karahodzic's) Religions Affiliation (Doc. 114)**

Plaintiffs seek to bar defense counsel and/or their witnesses from making reference to any party's religious affiliation, including that of Hasib Karahodzic, in this case. Specifically, plaintiffs request that no mention of the Karahodzic family's affiliation to the Islamic faith be permitted, arguing that it is not relevant to the underlying issues of this case.

In response, Defendants argue that plaintiffs have injected their religious and ethnic background into this case through the proposed expert testimony and exhibits describing the grief of the family, support from the local mosque, and the family's unique experiences resulting from their religious affiliation. Specifically, defendants propose exploration of any potential juror bias during *voir dire*.

Plaintiff injected religion into the case through the exhibits, depositions, and expert testimony of Dr. Edwin Wolfgram. Therefore, defendants may explore plaintiff's religion during *voir dire* in order to examine for potential bias. See e.g., *United States v. Dellinger*, 472 F.2d 340, 368 (7th Cir. 1972)("At a minimum, when requested by counsel, inquiry must be made into matters where the likelihood of prejudice is so great that not to inquire would risk failure in assembling an impartial jury.") Accordingly, based on the introduction of religion into the case thus far, the Court **DENIES** plaintiff's motion in limine.

**4. Plaintiff's Fourth Motion *in Limine* to Exclude Any Reference to Hasib Karahodzic's Alleged Fatigue Being Similar to or the Same as having any Level of Blood Alcohol Concentration (Doc. 116)**

Plaintiffs next seek to bar reference to any discussion of Hasib Karahodzic's alleged fatigue on the date of the accident being likened to a specific blood alcohol concentration. Specifically, plaintiffs argue that because Hasib Karahozic had no alcohol in his post mortem toxicology screen, Human Factors expert Dennis Wylie should be prohibited from comparing Hasib's level of fatigue to that equivalent of a blood alcohol concentration of .04% due to the alleged prejudicial effects.

However, as the Court previously noted in its *Daubert* ruling, Wylie's likeness of fatigue levels to alcohol intoxication cites to seven different published and peer-reviewed studies. Each study notes proper methodology and reliability accepted in the field as the basis of such a comparison (Doc. 103-2). Furthermore, the Court previously held Wylie's testimony about driver fatigue aids the trier of fact. Wylie will provide testimony regarding the reconstruction of Karahodzic's routes and his level of fatigue, which is "something more than what is 'obvious to the layperson." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Plaintiffs' concerns regarding Wylie's methods and comparison of Hasib's level of fatigue to that equivalent of a blood alcohol concentration are a matter of his expert testimony and proper subjects for cross-examination. See *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 596.). Thus, references to Hasib Karahodzic's fatigue likened to a particular blood alcohol concentration are admissible and the Court **DENIES** plaintiff's motion in limine.

**5. Plaintiff's Fifth Motion *in Limine* to Exclude Reference to Any Information, Reference to, or Documentation of John Goebelbecker's Nighttime Video Study (Doc. 118)**

Plaintiffs next seek to bar reference to, or documentation of, John Goebelbecker's Nighttime Video Study arguing that the conditions are not substantially similar to those at the time of the collision. Defendants counter highlighting this Court's previous order relevant to the reliability and admissibility of the Goebelbecker's methodology and study (Doc. 106). Defendants argue that

the study is used to illustrate various principles Goebelbecker relied on in forming his opinion, not to recreate the events of the night in question (Doc. 131).

The Court previously quoted that "[Seventh Circuit] case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." *Cooper v. Nelson,* 211 F.3d 1008, 1020 (7th Cir.2000). "Plaintiffs' criticisms of Goebelbecker's methods are proper subjects for cross-examination. *Walker v. Soo Line R.R.,* 208 F.3d 581, 591 (7th Cir.2000) (indicating that a failure to consider evidence or flaw in the study are appropriate for cross examination)." (Doc. 106). Therefore, based on the Court's previous order, in interest of consistency, plaintiff's motion in limine is **DENIED**. "Any attack by plaintiffs as to the weight of Goebelbecker's testimony and opinions is a subject appropriate for cross examination." (Doc. 106)

## 6. Plaintiff's Sixth Motion *in Limine* to Exclude Reference to Any Information, Reference to, or Documentation of Dan Witta's Lane Change Study Used in John Goebelbecker's Report (Doc. 120)

Plaintiffs next seek to bar reference to, or documentation of, Dan Witta's lateral movement test that is referenced in John Goebelbecker's report. Specifically, plaintiffs argue that it may mislead the jury stating that it is inaccurate given the conditions of Thompson's lane change. In response, the defendants highlight the Court's previous ruling on this matter and reiterate that the lateral movement test was utilized to refute plaintiffs' theory that Thompson's truck "darted out" in front of Hasib Karahodzic.

The Court previously stated:

> "Plaintiff also attacks the methodology and use of the lateral movement test performed by Dan Wiita, alleging that "its method is totally dissimilar from the facts of the case" (Doc. 88). Defendant argues that the lateral movement test was utilized to refute plaintiffs' theory that Thompson's truck "darted out" in from of Karahodzic's truck, leaving Karahodzic without time to brake. Defendants note that a large portion of Goebelbecker's opinion was based on his extensive experience in accident reconstruction (Doc. 104). Plaintiff discussed the weight discrepancy of the vehicle used in the study in great detail, which defendant argues is an appropriate topic for cross-examination, as it goes to the weight of the evidence not admissibility. The court agrees." (Doc. 106)

As the court incorporates by reference its findings from its previous ruling (Doc. 106), the Court remains consistent and **DENIES** the motion.

## 7. Plaintiff's Seventh Motion *in Limine* to Exclude Reference to Any Information, Reference to, or Documentation of Fatigue (Doc. 122)

Plaintiffs next seek to bar reference to, or documentation of, fatigue. Specifically, plaintiff mentions defense experts John Goebelbecker and Dennis Wylie and portions of their reports and proposed testimony related to fatigue. Defendants counter arguing that the issue of fatigue is central to this case and pertinent to the "actions or inactions by [Decedent that] proximately cause the accident". Furthermore, the defendants once again highlight the Court's previous ruling regarding Goebelbecker and Wylie's expert reports (Doc. 106).

The Court previously held both Goebelbecker and Wylie's opinions expressed in their report are admissible under Rule 702 and *Daubert*. The Court went on to state that plaintiffs' concerns regarding the experts' methods and conclusions, including those concerning Wylie's failure to account for caffeine, are proper subjects for cross-examination. This Court's previous order specifically referenced

that "[Seventh Circuit] case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." *Cooper v. Nelson*, 211 F.3d 1008, 1020 (7th Cir.2000). Hence, plaintiffs' criticisms of Goebelbecker and Wylie's methods relative to their fatigue analyses are proper subjects for cross-examination. See *Walker v. Soo Line R.R.*, 208 F.3d 581, 591 (7th Cir.2000) (indicating that a failure to consider evidence or flaw in the study is appropriate for cross examination). Therefore, consistent with this Court's previous ruling (Doc. 106), the Court **DENIES** the motion.

 **IT IS SO ORDERED.**

 Signed this 19th day of October, 2015.

Digitally signed by Judge David R. Herndon
Date: 2015.10.19 13:25:40 -05'00'

**United States District Court Judge**