**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

**EDIN KARAHODZIC and**
**EDIN KARAHODZIC, as**
**Personal representative of the**
**Estate of HASIB KARAHODZIC**

**Plaintiffs,**

**vs.**

**JBS CARRIERS INC. and ORENTIO**                    **Case No. 12-cv-1040-DRH**
**THOMPSON,**

**Defendants.**

**ORDER**

**HERNDON, District Judge:**

Pending before the Court are defendants' motions *in limine* to exclude: (1) post-accident and autopsy photographs of Hasib Karahodzic; (2) all evidence and testimony constituting legal conclusions about Thompson's operation of his vehicle at the time of the accident; (3) all evidence and testimony regarding medications Thompson may have been taking at the time of the collision; (4) all evidence and testimony regarding JBS' internal policies and procedures; (5) all evidence and testimony regarding Thompson's Workers' Compensation claim and subsequent settlement with JBS; (6) all evidence and trial testimony regarding audits of JBS and the Federal Motor Carrier Administration's JBS SAFER profile, or other similar documents assessing JBS' operations; (7) any evidence related to claims and legal theories not set forth in the pleadings; (8) any discussion, evidence, or testimony concerning Edina Karahodzic's allegations that she suffered from depression and attempted suicide as a result of Hasib Karahodzic's

death; (9) any discussion, evidence, or testimony related to the size of JBS, its wealth, or its corporate status; (10) any discussion, evidence, or testimony concerning the traffic citation issued to Thompson and dismissed by the State's Attorney; and (11) any discussion, evidence, or testimony related to the initial claim brought by JBS against decedent's estate and EJA Trucking and its subsequent settlement (Doc. 124).

**a.    Defendants' Requests for Exclusion of Specific Evidence**

Defendants seek preclusion of specific evidence and barring of specific testimony pursuant to FEDERAL RULES OF EVIDENCE 401, 402, and 403.  Rule 401 holds evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence."  FED. R. EVID. 401.  Further, relevant evidence is admissible unless a binding rule holds otherwise, while irrelevant evidence is inadmissible. See FED. R. EVID. 402.  Lastly, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.

**The Court hereby finds as follows:**

**1. Defendants' First Motion *in Limine* to Exclude the Admission and Publication of Post-Accident and Autopsy Photographs of Plaintiffs' Decedent**

Defendants request an Order excluding the photographs taken of Plaintiffs' decedent, Hasib Karahodzic, at the scene of the accident and during his autopsy.

Defendants argue that the photographs are both gruesome and inflammatory in nature, in addition to being unnecessary to prove the facts at issue. Furthermore, defendants argue that the probative value of the photographs is heavily outweighed by their prejudicial effects, especially given the fact that defendants do not object to descriptive testimony regarding the state of Hasib Karahodzic's remains provided by Edin Karahodzic and his family members.

In response, Plaintiffs argue that the purpose of the photographs is to offer a visual depiction of the scene observed by Edin Karahodzic at the time of his father's death (Doc. 134) Plaintiff goes on to argue that Edin has both a claim for the wrongful death of his father and a claim for negligent infliction of emotional distress in attempting to rescue him. Relevant to Edin's emotional distress claim, both Dr. Wolfgram and Dr. Smith diagnosed him with Post Traumatic Stress Disorder (PTSD) resulting from the sight of his father's body following the crash.

Accordingly, the Court **GRANTS** the motion, as the entire group of photographs prove to be more prejudicial than probative to the defendant. However, because the photographs are relevant to the subject of damages, Plaintiffs may select one photograph to submit for the Court's approval for use during trial.

2. **Defendants' Second Motion** *in Limine* **to Exclude All Evidence and Testimony Constituting Legal Conclusions about Thompson's Operation of his Vehicle at the Time of the Accident**

Defendants next request an Order excluding "all evidence and testimony constituting legal conclusions about Thompson's merger and rate of speed at the

time of the collision, extending to counsel and lay witnesses…" (Doc. 124). Defendants argue that based on the Court's previous *Daubert* ruling that excluded Plaintiffs' proposed expert testimony concerning Orenthio Thompson's violations of Illinois traffic laws, Plaintiff may now seek to introduce evidence or make arguments alluding to state law violations. Defendants believe that such evidence is both barred by Rule 702 and would be unfairly prejudicial.

In response, plaintiff argues that various experts will offer opinions that do not specify that Thompson expressly violated Illinois law and will comply with the Court's previous Order. Their opinions will discuss Thompson's conduct and opinions in relation to said conduct on the date of the accident, but without mention of statutory violations. Additionally, plaintiffs argue that Rule 702 does not prevent Mr. Thompson from explaining "his slow speed and his failure to use a left hand blinker when changing lanes from the shoulder to the right hand travel lane".

With respect to Defendants' second motion *in limine*, the Court agrees with plaintiffs' counsel. Plaintiffs' experts shall be permitted to offer testimony and opinions using the facts of the case, including those relevant to driver conduct, to assist the trier of fact. However, as previously stated, experts may not opine as to whether Thompson's actions violated the Illinois' statutes governing merging traffic (625 ILCS 5/11-905) and minimum speed regulations (625 ILCS 5/11-606). Accordingly, Defendants' motion is **DENIED.**

**3. Defendants' Third Motion *in Limine* to Exclude All Evidence and Testimony Regarding Any Medications Identified in Thompson's Lab Reports**

Defendants' third motion seeks exclusion of all evidence and testimony regarding medications Thompson may have taken prior to the accident, or was administered following the collision. Specifically, defendants argue that Plaintiffs failed to provide any timely disclosure of expert opinions that Thompson's medications contributed to cause the collision. Additionally they argue that the detection of morphine in Thompson's urinalysis would be misleading to the jury, and, thus prejudicial, as morphine was administered as part of Thompson's post-accident medical treatment for injuries.

In response, Plaintiffs argue that the influence of morphine and its effects may have impacted Thompson's account of the accident. Specifically, plaintiffs argue that "[t]he administration and influence of morphine to Mr. Thompson is clearly relevant, in that many of the post-accident statements given by Mr. Thompson, in medical records, and in writing in the police report, may have been inaccurate as a result of Mr. Thompson being under the influence of morphine" (Doc. 134).

With respect to Defendants' third motion *in limine*, the Court agrees with plaintiffs' counsel. Therefore, based on its relevance to the issue of accuracy of Thompson's statements following the accident, the Court **DENIES** Defendants' motion *in limine* to exclude any reference to medications Thompson may have taken prior to, or was administered following, the accident.

**4. Defendants' Fourth Motion *in Limine* to Exclude All Evidence and Testimony Regarding JBS' Accident Review Procedures**

Defendants' fourth motion seeks exclusion of all evidence and testimony regarding JBS Carriers, Inc.'s internal policies and procedures. Specifically, they seek to bar Plaintiffs from arguing or suggesting that Thompson and JBS Carriers did not comply with JBS' policies, including its "Driver Accident Reporting Procedures" and the "Accident Review Committee". Defendants argue that the Accident Review Committee does not apply the level of scrutiny when reviewing accidents as that utilized by this Court, and therefore the evidence is both irrelevant and misleading to the jury.

In response, plaintiffs argue that JBS Carrier's failure to follow its own internal procedures, by failing to convene the Accident Review Committee to review the accident at issue, exhibits a failure to take subsequent remedial measures.

As both parties note, the Accident Review Committee did not review the accident in the case at issue. Additionally, the Committee applies a different standard than that utilized by the Court to determine negligence in this case. Specifically, the preventability standard utilized by JBS Carriers is not one solely based on a legal liability determination (Doc. 124, Exhibit F). The Court finds that JBS' procedures subsequent to an accident, including its "Driver Accident Reporting Procedures" and the "Accident Review Committee, fail to add anything of relevance to issues fact to be found by the jury in this case. Therefore, the Court **GRANTS** defendants' motion *in limine*.

5. **Defendants' Fifth Motion** *in Limine* **to Exclude all Evidence and Testimony Regarding Thompson's Workers' Compensation Claim and its Resolution**

Defendants' fifth motion seeks exclusion of all evidence and testimony regarding Thompson's Workers' Compensation claim and subsequent settlement with JBS Trucking. Specifically, Defendants wish to bar any attempt by Plaintiffs to seek admission of the General Release into evidence or mention Thompson's Workers' Compensation claim that he made following the accident at issue. Defendants argue that by allowing Plaintiff to inquire about Thompson's resignation or his workers' compensation claim, it may create an impression in the mind of the jury that JBS determined Thompson to be at fault for the accident, and JBS terminated him as a result.

Plaintiffs counter arguing that the compensation claim and settlement are relevant because the General Release related to the Workers' Compensation claim and shows that Thompson was misled when signing the settlement documents with JBS. Plaintiff argues JBS' policy allegedly initiates settlement but makes it so employees who are in accidents, such as Thompson, may not continue working for the company.

Plaintiffs' position regarding Thompson's inability to continue as a JBS employee following an accident would allow for the jury to speculate as to whether Thompson was fired from JBS Carriers. Therefore, Defendants' motion will be granted. Even if Thompson did not understand the release and associated

paperwork, nothing states that he was fired from JBS Carriers. Accordingly, Defendants' motion *in limine* is **GRANTED.**

6. **Defendants' Sixth Motion *in Limine* to Exclude all Evidence and Testimony Regarding Audits of JBS and the Federal Motor Carrier Administration's JBS SAFER Profile or Other Similar Documents Assessing JBS' Operation**

Defendants' sixth motion seeks exclusion of all documentary evidence and trial testimony regarding audits of JBS Trucking and the Federal Motor Carrier Administration's (FMCA) JBS Trucking SAFER profile or other similar documents assessing JBS' operations Specifically, defendants wish to exclude all documents and testimony discussing Department of Transportation (DOT) audits and the associated press release, any resulting citations, and any subsequent remedial measures agreed to by JBS in the settlement with the DOT. Defendants contend that any evidence regarding the audit is both irrelevant and prejudicial.

Plaintiffs counter by arguing that the SAFER profile is relevant in this case because Thompson improperly logged his time into the electronic log, despite having been trained on the system. Specifically, Plaintiffs highlight that Thompson stated his belied was that he could input "off duty" or "on duty" into the machine, and either would be correct prior to the accident. (Doc. 134-1, p.129).

However, with respect to Defendants' sixth motion *in limine*, the Court agrees with Defendant's counsel.  Thompson's misunderstanding of his tracking does not make relevant all evidence of why JBS Trucking installed the electronic onboard recorders on its trucks, or the circumstances underlying FMCA initiating their installation. Accordingly, Defendants' motion *in limine* is **GRANTED.**

**7. Defendants' Seventh Motion** *in Limine* **to Exclude Reference to Any Claims Not Included in the Pleadings**

Defendants' seventh motion seeks to bar Plaintiffs from presenting evidence on any theory of recovery not alleged in the pleadings. Plaintiffs counter arguing that they should be allowed to advance any theory supported by the evidence, since the Federal Rules of Civil Procedure do not require fact pleading.

Plaintiffs shall be limited to those issues set forth in the final pretrial conference order. Therefore, it is ordered that Defendants' motion *in limine* seeking to exclude reference to claims not included in the pleadings is **DENIED.**

**8. Defendants' Eighth Motion** *in Limine* **to Exclude Any Information, Reference to, or Evidence of Edina Karahodzic's Alleged Depression or Suicide Attempt**

Defendants' eighth motion seeks to bar Plaintiffs from presenting evidence, testimony, or making mention Edina Karahodzic's alleged depression and suicide attempt following Hasib Karahodzic's death. Defendants contend that Edina's suicide attempt is not relevant to the underlying claim, and even if the Court finds that it is, the alleged suicide attempt is unfairly prejudicial based on Edina's lack of diagnosis and treatment from a health care provider. In further support of their argument, Defendants argue that the plaintiffs have not disclosed an expert to opine and establish a causal connection between the accident that resulted in Hasib's death and the attempted suicide.

Plaintiffs argue that Edina's suicide attempt is relevant to establishing her claim for damages pursuant to Illinois' Wrongful Death Act, 740 ILCS 180/2. Specifically, Plaintiffs argue that this case is similar to *People v. Hudson*, 886

N.E.2d 964 (Ill. 2008), where the Illinois Supreme Court held that expert testimony was not necessary in the case of a home invasion victim, because the circumstances were such that the jury could have reasonably found that the events generated the emotional distress. Additionally, there was testimony about the plaintiff's behavior and emotional state following the home invasion. *Hudson*, 886 N.E.2d at 973. Plaintiffs indicate that in this case, all the facts surrounding Edina's depression and attempted suicide indicate that her depression and suicide attempt arise from her father's death and the nightmares arising from her seeing his burned body. Plaintiffs also plan to produce testimony about the Edina's depression and suicide attempt following her father's death.

Therefore, assuming that plaintiff can lay the proper foundation set out in their response to the motion *in limine*, the evidence will be allowed. As a result, Defendants' motion *in limine* is **DENIED.**

9. **Defendants' Ninth Motion** *in Limine* **to Exclude Any Information, Reference to, or Evidence of Defendants' Size, Wealth, or Corporate Status**

Defendants' ninth motion seeks to bar plaintiffs from "presenting any mention, evidence, or testimony during *voir dire*, opening statement, Plaintiffs' case, rebuttal, closing argument, or any other portion of this trial, which is in any way related to the size of JBS, its net worth, any valuation, earnings, profits, wealth, assets or any other index of the economic or financial condition of JBS" (Doc. 124). Defendants argue that Plaintiffs seek only compensatory damages in this case, and therefore any evidence concerning the size of JBS Trucking and its

economic condition is irrelevant to the underlying claim and would be unfairly prejudicial.

Plaintiffs, in response, concede that they will not discuss the net worth and wealth of JBS Carriers. However, Plaintiffs argue that the size and corporate status of JBS Carriers is relevant based on JBS' utilization of administrative staff to control hiring and training of drivers, driver locations, logs, and accident reporting.

Based on Plaintiffs' concession to not discuss the net worth and wealth of JBS Carriers, the motion in limine is **GRANTED** as to net worth, corporate earnings, and profits of JBS Carriers.  However, the motion is **DENIED** as to the size of JBS, namely the number of drivers and trucks employed by JBS, as that information could be relevant at trial, and thus shall not be excluded on motion *in limine*. Therefore, Defendants' motion *in limine* is **GRANTED in part and DENIED in part**.

10. **Defendants' Tenth Motion *in Limine* to Exclude Any Information, Reference to, or Documentation of the Traffic Citation Issued to Thompson and Dismissed by the State's Attorney's Office**

Defendants' tenth motion *in limine* seeks to bar Plaintiffs from "presenting any mention, evidence, or testimony during voir dire, opening statement, Plaintiffs' case, rebuttal, closing argument, or any other portion of this trial, which is in any way related to a traffic citation that was issued to Thompson following the commercial motor vehicle accident, since it was eventually dismissed by the State's Attorney pursuant to a Motion to *Nolle Prosequi*" (Doc. 124).  Defendants

argue that evidence of the citation is unfairly prejudicial and not relevant to the underlying claim, since the citation was dismissed without being proven beyond a reasonable doubt.

Because Plaintiffs filed no response, and therefore seemingly do not object to Defendants' motion *in limine* to exclude this evidence, Defendants' motion in limine to exclude reference to, or documentation of the traffic citation issued to Thompson and subsequently dismissed by the State's Attorney's Office is **GRANTED**.

11. **Defendants' Eleventh Motion *in Limine* to Exclude Any Information, Reference to, or Documentation of the Initial Claim Brought by JBS Against Decedent's Estate and EJA Trucking and Subsequent Settlement**

Defendants' final motion seeks to bar Plaintiffs from "presenting any mention, evidence, or testimony during *voir dire*, opening statement, Plaintiffs' case, rebuttal, closing argument, or any other portion of this trial, which is in any way related to the fact that JBS initially brought negligence claims against Decedent's estate and its subsequent settlement, resulting in a realignment of the parties/caption" (Doc. 124). Defendants argue that that evidence and testimony concerning the initial claims brought by JBS Carriers are irrelevant under F.R.E. 401 and should be deemed inadmissible. Specifically, Defendants cite to the jointly filed December 9, 2013 motion to re-align the parties to this action (Doc. 62), which the Court subsequently granted following the confidential settlement agreement (Doc.63). Defendants further contend that Plaintiffs willingly partook in petitioning the Court for realignment of the parties in order to reflect the true

interests of this litigation. Moreover, Defendants argue that the initial claims brought by JBS are not relevant to the underlying claim of this litigation.

Plaintiffs, in response, contend that upon their reading of the aforementioned settlement agreement, the agreement allows for discussion of the fact that JBS was a plaintiff prior to the realignment, and JBS filed a lawsuit against EJA Trucking and Edin Karahodzic in his representative capacity.

With respect to Defendants' final *in limine* request, the Court agrees with Defendants' counsel that the evidence of settlement of other claims is irrelevant. Therefore, the motion *in limine* is **GRANTED**.

**IT IS SO ORDERED.**
Signed this 5th day of November, 2015.

Digitally signed
by Judge David R.
Herndon
Date: 2015.11.05
10:39:33 -06'00'

**United States District Court Judge**